IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATINA KNOWLES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY | : | NO. 20-3513 |

**MEMORANDUM OPINION**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                              October 25, 2021

    Plaintiff has filed a civil rights action alleging that her removal from Temple University's doctoral program in Philosophy resulted from a violation of her due process rights. Defendant has filed a motion for summary judgment. Plaintiff has responded to it, Defendant has filed a reply, and Plaintiff has filed a supplemental response. For the reasons provided below, Defendant's motion is granted.

**I.    BACKGROUND**[1]

    Plaintiff was a graduate student in the Philosophy department at Temple University, starting in the Fall of 2016. Statement of Undisputed Material Facts ("Und. Mat. Facts") at ¶ 2. Successful completion of the program requires maintaining a 3.0 grade point average and passing two sets of preliminary exams. *Id.* at ¶ 4. One Preliminary Exam ("PE") should concern the History of Philosophy; the other should address Contemporary Philosophy; the student has the option as to which subject to address first. *Id.* at ¶ 5. A student presents the first PE at the beginning of the second year and the second PE at the beginning of the third year. *Id.* at ¶ 6. The student must submit the PE in a Word document that contains no personal identifying information.

---

[1] The court's scheduling order directed the parties to meet and confer in order to produce a joint statement of stipulated material facts. Defendant asserts that Plaintiff refused to participate in that process. Nevertheless, in Plaintiff's response to Defendant's motion, Plaintiff explicitly agrees to the vast majority of the undisputed material facts Defendant has submitted. The court relies upon the facts to which Plaintiff has agreed.

*Id.* at ¶ 7. The Department Chair disseminates the papers to appropriate faculty for grading. *Id.*

Plaintiff submitted her first PE on October 9, 2017; she stated that, although the paper was assigned to her by Professor Wolfsdorf, he did not work with her on the paper; she consulted with Professor Vision. Und. Mat. Facts at ¶ 32. On November 3, 2017, Professor Gjesdal informed Plaintiff that she had failed her first PE; without disclosing the identity of the three graders, Professor Gjesdal told Plaintiff that she had received a Fail, High Pass and Borderline. *Id.* at ¶ 33. Plaintiff later learned the three graders and their respective assessments were: Professor Wolfsdorf (Fail), Professor Margolis (High Pass) and Professor Solomon (Borderline). *Id.* at ¶ 34. On November 8, 2017, Plaintiff emailed Professor Gjesdal to complain about her scores. *Id.* at ¶ 35. Although she correctly inferred that Professor Wolfsdorf had been one of the graders, she incorrectly inferred that the other two graders had been Professors Chislenko and Vision. *Id.* On February 8, 2018, Plaintiff met with Professor Gjesdal and Dr. Schurr, the Vice Dean of Graduate Affairs, to discuss Plaintiff's first PE results. *Id.* at ¶ 38. Since the first PE results are not reported to the graduate school, there was no grievance procedure. *Id.*

On October 8, 2018, Plaintiff submitted her second PE; one concerned Locke and one was about Geach. Und. Mat. Facts at ¶ 47. On November 9, 2018, Professor Gjesdal informed Plaintiff that she had failed her PEs again; she did not disclose the identity of the graders to Plaintiff. *Id.* at ¶ 48. The Locke paper was graded by the following professors and received the following grades: Chamberlin (Fail), Hammer (Fail), and Vision (Pass). *Id.* at ¶¶ 48-49. Plaintiff's Geach paper was graded by the professors identified as follows: Wolfsdorf (Fail), Hammer (Borderline), and Solomon (Borderline). *Id.*

On December 22, 2018, Plaintiff initiated her grievance for failing the PEs. Und. Mat. Facts at ¶ 51. In January 2019, Professor Gjesdal, the Director of Graduate Studies in the

Philosophy Department, formed a committee to review Plaintiff's grievance. *Id.* at ¶ 53. She, along with Professor Ostaric and Professor Duckworth (of the Religion Department) formed the committee, which met in late January 2019. *Id.* On January 31, 2019, Professor Ostaric wrote a letter memorializing the committee's determination that the graders followed the established PE procedures and treated Plaintiff on parity with other students; Plaintiff was informed that she could appeal this decision to the Vice-Dean of Graduate Affairs. *Id.* at ¶ 54.

On February 16, 2019, Plaintiff appealed the grievance committee's decision. Und. Mat. Facts at ¶ 56. On March 10, 2019, the student ombudsperson contacted Plaintiff and asked to meet with her. *Id.* at ¶ 57. The ombudsperson met with Plaintiff and Professors Ostaric and Duckworth. *Id.* at ¶ 60. The ombudsperson's report noted that Plaintiff made disparaging comments about the academic qualifications of four of the faculty members in the Philosophy department; he further noted that Professors Ostaric and Duckworth separately told him that the initial committee reviewed Plaintiff's PE procedures and determined that all department policies and procedures were properly applied. *Id.* On April 3, 2019, the College of Liberal Arts ("CLA") Graduate Committee met and read the ombudsperson's report. *Id.* at ¶ 61. CLA Dean Richard Deeg, in a letter dated April 5, 2019, informed Plaintiff that the Graduate Committee unanimously determined that the PE graders properly followed the exam procedures; since Plaintiff was not dismissed from an academic program, no further appeal was available. *Id.*

On February 10, 2019, a few days prior to appealing the grievance concerning her PE failure, Plaintiff submitted her second attempt to pass her PEs; one paper concerned Eudaimonia, the other Heidegger. Und. Mat. Facts at ¶ 55. On March 13, 2019, Professor Gjesdal informed Plaintiff that she had failed her second attempt to pass her PEs; Plaintiff was not informed of the identity of the graders. *Id.* at ¶ 58. For the Eudaimonia paper Plaintiff received the following

3

grades from the identified professors: Wolfsdorf (Fail), Chislenko (Borderline), and Chae (Borderline). *Id.* at ¶ 59. For Plaintiff's Heidegger paper, the professors and grades were: Chamberlain (Fail), Hammer (Fail), and Ostaric (Borderline). *Id.* On May 6, 2019, Plaintiff filed her grievance concerning those failures. *Id.* at ¶ 62. In her grievance, Plaintiff accused the professors who graded her PEs of "philosophical ineptness" and admitted that her grievance was intentionally disrespectful. *Id.* at ¶ 63.

Professor Gjesdal formed a grievance committee consisting of Professors Solomon, Duckworth and Vision. Und. Mat. Facts at ¶ 64. On May 21, 2019, Professor Solomon identified, herself and Professors Duckworth and Vision as members of the grievance committee, she incorrectly listed Professor Wolfsdorf as participating on the committee. *Id.* Professor Solomon stated that the grievance committee had rejected Plaintiff's grievance, since most of her complaints consisted of *ad hominem* attacks on presumed graders – these were insufficient grounds to substantiate a grievance. *Id.*

On May 28, 2019, Plaintiff appealed her dismissal to Amy Defibaugh at the CLA. Und. Mat. Facts at ¶ 67. In her appeal, Plaintiff questioned the professional qualifications of certain professors, including Wolfsdorf and Chislenko. *Id.* Plaintiff stated that half of the instructors in the Philosophy department were "philosophically deficient." *Id.* On May 30, 2019, Ms. Defibaugh informed Plaintiff of the student ombudsperson she had appointed. *Id.* at ¶ 68. Plaintiff provided documentation to the ombudsperson and they met on June 3, 2019. *Id.* On June 21, 2019, the ombudsperson submitted her report to the CLA Graduate Committee. *Id.* at ¶ 69. The report concluded that none of Plaintiff's evaluators had ill-intent and that the double blind feature of the PEs was successfully implemented. *Id.* On June 25, 2019, the CLA Graduate Committee met to consider Plaintiff's appeal. Und. Mat. Facts at ¶ 70. The committee unanimously agreed with the

Philosophy Department's decision to dismiss Plaintiff from the doctoral program. *Id.* Dean Deeg informed Plaintiff that she could appeal this decision to the Graduate School. *Id.*

On July 1, 2019, Plaintiff appealed to Zebulon Kendrick, Vice Provost for Graduate Education and filed a petition for reinstatement. Und. Mat. Facts at ¶ 70. On August 9, 2019, Dr. Schurr informed Plaintiff that the Graduate Board Student Appeals Committee would meet on August 28, 2019 to consider her petition for reinstatement; Plaintiff was invited to address the committee and was asked to submit any documents she wanted considered. *Id.* at ¶ 72. On August 28, 2019, the committee met and Plaintiff addressed it. *Id.* at ¶ 73. During the course of addressing the committee, Plaintiff referred to an email exchange with Professor Wolfsdorf. *Id.* Dr. Kendrick asked Plaintiff to forward the email. *Id.* After Plaintiff left the hearing, Dr. Gjesdal addressed the committee and said that Plaintiff had refused to work with the faculty, would not do what she was advised to do, and was non-compliant. *Id.* After Professor Gjesdal left the hearing, the committee voted 6-0 not to reinstate Plaintiff. *Id.* at ¶ 74. After the August 28 hearing, Plaintiff forwarded the email exchange with Professor Wolfsdorf to Dr. Kendrick. *Id.* at ¶ 75. On August 28, 2019, Dr. Kendrick forwarded the email exchange to the other committee members and asked them to tell him if it would change their vote. *Id.* at ¶ 76. On September 1, 2019, Plaintiff wrote to Dr. Kendrick to present her concerns about how the August 28 hearing had gone. *Id.* at ¶ 77. She concluded that the only way to resolve the matter was to pass her two papers and reinstate her into the program. *Id.* On September 5, 2019, Dr. Kendrick informed Plaintiff that the committee had denied her petition for reinstatement. *Id.*

## II.   STANDARD OF REVIEW

Summary Judgment is appropriate if "the movant shows that that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party.  *Secretary, United States Dept. of Labor v. American Future Systems, Inc.*, 873 F.3d 420, 424 (3d Cir. 2017).  The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-52 (1986).  The court does not make credibility determinations, or weigh the evidence.  *Secretary, United States Dept. of Labor*, 873 F.3d at 424.

### III.  DISCUSSION

In this case, Defendant argues that summary judgment should be granted because the record demonstrates that Plaintiff received all the process she was due under the federal constitution.  As explained below, considering the undisputed facts, this court agrees that Defendant is entitled to judgment as a matter of law.

**A.  Due Process Requirements**

Plaintiff presents a procedural due process claim.  *See* Complaint at ¶ 27.  Under binding precedent, in a dismissal for academic reasons, which is this case, very little formal process must be afforded to a student in order to satisfy procedural due process requirements.  Indeed, the Supreme Court has held that a hearing is not required to dismiss a student for academic reasons.  *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978).  Instead, all that is required to satisfy due process is an informal faculty evaluation with the student.  *Mauriello v. University of Medicine and Dentistry*, 781 F.2d 46, 51 (3d Cir. 1986).

**B.  Application of Due Process Requirements**

In this case, Plaintiff was afforded far more process than is required.  As noted in the Background, after Plaintiff failed her first attempt at her second PEs, she filed a grievance with the

Philosophy Department and, thereafter, appealed the denial of her grievance to the CLA Graduate Committee. After Plaintiff failed the second attempt to pass her second PEs, she filed another grievance with the Philosophy Department and an appeal of the denial of her grievance to the CLA Graduate Committee. Plaintiff was dismissed from the graduate school, and, therefore, was allowed to appeal the denial of this grievance to the Graduate Board Student Appeals Committee ("GBSAC"). She was allowed to present documentation before the hearing, appeared at the August 28, 2019 hearing, and personally address the GBSAC. Post hearing, Plaintiff submitted additional evidence to the GBSAC. After considering this evidence and hearing from Professor Gjesdal, the GBSAC denied Plaintiff's petition to be reinstated. All of the steps Defendant afforded Plaintiff to contest her removal from the graduate school far exceed the minimal process due– an informal faculty evaluation with the student, *Mauriello*, 781 F.2d at 51. Hence, Defendant is entitled to judgment as a matter of law.

An implementing order and Order of Judgement follow.